IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANDREA SMITH,<br><br>        Plaintiff,<br>v.<br><br>EGS FINANCIAL CARE, INC.;<br>FIRST CONTACT, LLC; GC SERVICES<br>LIMITED PARTNERSHIP; and<br>iENERGIZER, INC.,<br><br>        Defendants. | Case No. 2:22-cv-02100<br><br><br>**COMPLAINT AND<br>JURY DEMAND** |

Plaintiff Andrea Smith, by and through her attorneys, files this Complaint against Defendants EGS Financial Care, Inc. ("EGS"), First Contact, LLC ("First Contact"), GC Services Limited Partnership ("GC Services"), and iEnergizer, Inc. ("iEnergizer"), (together, the "Defendants") for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and intrusion upon Ms. Smith's seclusion, and alleges as follows.

## INTRODUCTION

1. Count I of Ms. Smith's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Ms. Smith's Complaint is based upon the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in connection with the collection of consumer debts.

3. Count III of Ms. Smith's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from §652B of the Restatement (Second) of Torts. §652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . that would be highly offensive to a reasonable person."

## JURISDICTION

4. Jurisdiction of this court arises under 28 U.S.C. §§1331, 1367 and 47 U.S.C. §227.

5. Federal question jurisdiction exists because Defendants' conduct violates Ms. Smith's rights under the TCPA and the FDCPA, federal statutes.

6. Supplemental jurisdiction exists because all of Plaintiff's claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events giving rise to the claim occurred within the geographic boundary of the Western District of Tennessee.

8. Because Defendants' conduct was aimed at, the effects of its conduct were suffered in, and it transacts business in the Western District of Tennessee, personal jurisdiction is established.

## PARTIES

9. Ms. Smith is a natural person.

10. During all times pertinent to this complaint Ms. Smith resided in Bartlett, Tennessee.

11. Ms. Smith is a "consumer" as defined under 15 U.S.C. §1692a(3).

12. Defendants are "debt collector[s]" as defined under 15 U.S.C. §1692a(6).

13. EGS is a Pennsylvania debt collector with its principal place of business located in

Irvine, California. EGS can be served at its principal place of business located at 5161 California Ave Ste 100, Irvine, CA 92617.

14. First Contact is a Minnesota debt collector, and its principal place of business is located at 12755 Highway 55, Suite 300, Plymouth, MN 55441. First Contact can be served through its registered agent C T Corporation Systems Inc., located at 1010 Dale St N, St Paul, MN 55117.

15. GC Services is a Delaware debt collector with its principal place of business located at 6330 Gulfton, Houston, TX 77081. GC Services can be served through its registered agent C T Corporation Systems Inc., located at 1999 Bryan St., Ste 900, Dallas, TX 75201.

16. iEnergizer is a Delaware debt collector. iEnergizer can be served through its registered agent Agents for Delaware Corporations, Inc., located at 310 Alder Road, P.O. Box 841, Dover DE 19904.

17. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

18. The debt underlying this action are "debt" as defined under 15 U.S.C. §1692a(5) because it originated in obligations or alleged obligations of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

19. Beginning in or around August 2018, Defendants began calling Ms. Smith's cellular phone attempting to collect a debt allegedly owed by Ms. Smith to non-party Credit One Bank, N.A. ("Credit One").

20. Credit One hired third party vendors GC Services, iEnergizer, and First Contact to

place the collection calls to Credit One customers including Ms. Smith.

21. Defendants placed the collection calls and impersonated Credit One, hiding their true identities and relationships as debt collectors.

22. Defendants misrepresented and deceived Ms. Smith as to their true identity and their affiliation to Credit One.

23. Defendants placed telephone calls to Ms. Smith's cellular phone without a meaningful disclosure as to their true identity.

24. Defendants intentionally and knowingly refrained from disclosing their true identity so as to circumvent and avoid the requirements of the FDCPA

25. Defendants provided call center collectors to Credit One and used their own agents and equipment to contact Ms. Smith.

26. Defendants are in the business of collecting consumer debts owed or due or asserted to be owed or due another.

27. Between August 21, 2018 and December 7, 2019, Defendants called Ms. Smith on her cellular telephone no less than **ONE THOUSAND AND EIGHTY-FIVE** (1,085) times.

28. On or about December 7, 2019, Ms. Smith answered a call from Defendants. After picking up the call, Ms. Smith noticed an unusually long delay and recalls hearing a series of clicks, beeps or tones before the representative began speaking, consistent with the use of an automatic dialing system.

29. The representative informed and led Ms. Smith to believe that the representative was an employee of Credit One.

30. The representative then informed Ms. Smith that the representative was attempting to collect an alleged debt owed by Ms. Smith to Credit One.

31. After going through the identification process, Ms. Smith informed the representative that she had no money to pay because her boiler system broke down and she needed to replace it.

32. Ms. Smith instructed the representative to stop calling her and instead to communicate with her by mail.

33. Despite Ms. Smith expressly informing the representative not to call her and that she could not pay at the time, Defendants began a harassment campaign by calling Ms. Smith on her cellular phone relentlessly for four months, including on the weekends.

34. The calls originated from the following numbers: (866) 431-2304; (205) 848-6375; (901) 979-0879; (205) 848-6382; (205) 848-6267; (205) 848-6320; (205) 848-6335; (205) 848-6404; (205) 848-6283; (205) 848-6345; (205) 848-6426; (205) 848-6294; (205) 882-7231; (205) 882-7169; (205) 882-7200; (205) 882-7207; (205) 882-7237; (205) 882-7175; (205) 882-7212; (205) 882-7242; (205) 882-7180; (205) 882-7254; (205) 882-7191; (205) 855-0231; (205) 855-0288; (205) 855-0169; (205) 855-0300; (205) 855-0190; (205) 855-0248; (205) 855-0307; (205) 855-0198; (205) 855-0261; (205) 855-0222; (205) 855-0276; (205) 855-0330; (205) 573-4215; (205) 778-1129; (205) 778-1766; (205) 778-1485; (205) 778-1914; (205) 778-1535; and (205) 778-2137.

35. Upon information and belief, these numbers are independently owned or operated by Defendants.

36. Upon information and belief, Defendants "spoofed" or made their calls to show as originating from those numbers.

37. Between December 23, 2019 and March 13, 2020, First Contact called Ms. Smith on her cellular telephone no less than **FOUR HUNDRED AND EIGHTY-EIGHT (488)** times

after Ms. Smith requested for the calls to cease.

38. Defendants called Ms. Smith almost every day, including the weekends.

39. Defendants called Ms. Smith several times a day on a regular basis, up to four (4) times in one day.

40. Defendants called Ms. Smith at all times of the day, from as early as 8 a.m., to as late at 8 p.m.

41. Upon information and belief, Defendants also called and texted, or attempted to call and text friends and family of Ms. Smith with the intention that they would communicate to Ms. Smith that Defendants were attempting to collect a debt from her, causing Ms. Smith additional embarrassment and distress.

42. Upon information and belief, Defendants called Ms. Smith and delivered prerecorded or artificial voice messages.

43. Upon information and belief, Defendants' systems "use a random generator to determine the order in which to pick phone numbers from a preproduced list" as provided to it by Credit One and "then store those numbers to be dialed at a later time." *Facebook, Inc. v. Duguid*, 592 U. S. ____, slip op. 10, n.7 (2021).

44. Upon information and belief, Defendants' equipment used to call Ms. Smith has the capacity to store a telephone number using a random or sequential number generator and then dial those numbers at the appropriate times of the day so as to not call before the allowable times depending on the zip code where each of the Credit One customers reside.

45. Upon information and belief, Defendants' systems used to call Ms. Smith have the capacity to produce a telephone number using a random or sequential number generator.

46. Defendants' intrusion upon Ms. Smith's seclusion was highly offensive to the

Complaint

reasonable person and exceeded reasonable collection efforts. Defendants' conduct was especially unreasonable because they called relentlessly shortly after Ms. Smith had explained the reason why she did not have money to repay and expressly revoked consent to be called.

47. Defendants' conduct was not only knowing and willful but was done with the intention of causing Ms. Smith such distress, so as to induce her to pay the debt or somehow pay more than she was able to.

48. Defendants are familiar with the TCPA and the FDCPA.

49. Each and every one of Defendants' telephone calls caused Ms. Smith distraction and temporary loss of use of her telephone line.

50. As a result of Defendants' conduct, Ms. Smith has sustained actual damages including but not limited to, stress, anxiety, embarrassment, anguish, severe emotional and mental pain.

51. Ms. Smith was additionally forced to spend considerable time, money and effort into identifying the actual parties that were violating her rights because Defendants had intentionally concealed their true identities and deceived Ms. Smith into believed it was Credit One who was calling her.

*Procedural Background*

52. On August 18, 2020, non-party Michelle Jones —represented by undersigned counsel's law firm— filed a complaint against Credit One and Does 1-5, before the U.S. District Court for the District of Nevada (the "Jones Litigation"). (*Jones, Michelle v. Credit One Bank, N.A. et al.*, Case No. 2:20-cv-01523.)

53. On May 28, 2020, Plaintiff filed a complaint against Credit One and Does 1-5, before the U.S. District Court for the District of Nevada. (*Smith, Andrea v. Credit One Bank, N.A.*

*et al.*, Case No. 2:20-cv-00959-KJD-EJY.)

54. On December 8, 2020, the Nevada Court granted Credit One's motion to compel arbitration in the Jones Litigation, as well as other cases pending in the Nevada District against Credit One and Does 1-5 alleging similar facts and asserting similar claims, and represented by undersigned counsel's law firm. (Doc. 19.)

55. Thereafter, Plaintiff filed a demand for arbitration against Credit One before AAA.

56. On or about November 3, 2021, Plaintiff and Credit One settled that arbitration.

57. On or about December 22, 2021, Credit One disclosed to Plaintiff, and Plaintiff learned for the first time, that Defendants were the unidentified parties named "Does 1-5" in Plaintiff's Nevada litigation and AAA arbitration against Credit One.

## COUNT I

### Violations of the TCPA, 47 U.S.C. §227

58. Ms. Smith incorporates by reference the foregoing paragraphs as though fully stated herein.

59. First Contact violated the TCPA. First Contact's violations include, but are not limited to the following:

> a) Within four years prior to the filing of this action, on multiple occasions, First Contact violated 47 U.S.C. §227(b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."

b) Within four years prior to the filing of this action, on multiple occasions, First Contact violated 47 U.S.C. §227(b)(1)(B) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. . . ."

c) Within four years prior to the filing of this action, on multiple occasions, First Contact willfully and/or knowingly contacted Ms. Smith on her cellular telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, First Contact knowingly and/or willfully violated the TCPA.

60.  As a result of Defendants' violations of 47 U.S.C. §227, Ms. Smith is entitled to declaratory judgment that First Contact's conduct violated the TCPA, and an award of five hundred dollars ($500.00) in statutory damages for each and every negligent violation, pursuant to 47 U.S.C. §227(b)(3)(B). If the Court finds that First Contact knowingly and/or willfully violated the TCPA, Ms. Smith is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. §§227(b)(3)(B), (C).

## COUNT II

### Violations of the FDCPA, 15 U.S.C. §1692 *et seq.*

61.  Ms. Smith incorporates by reference the foregoing paragraphs as though fully stated herein.

62.  Defendants violated the FDCPA. Defendants' violations include, but are not limited to the following:

a) collecting or attempting to collect a consumer debt without complying with the provisions of 15 U.S.C. §§1692b to 1692j;

b) engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, 15 U.S.C. §1692d;

c) causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, 15 U.S.C. §1692d(5);

d) using false, deceptive, or misleading representations or means in connection with the collection of any debt, 15 U.S.C. §1692e;

e) using false representations or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. §1692e(10);

f) failing to disclose in the initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and failing to disclose in subsequent communications that the communication is from a debt collector, 15 U.S.C. §1692e(11);

g) using Credit One's name instead of Defendant's true business, company, or organization name, 15 U.S.C. §1692e(14);

h) using unfair or unconscionable means in connection with the collection of an alleged debt, 15 U.S.C. §1692f.

63. Defendants' acts, as described above, were done knowingly and willfully.

64. As a result of the foregoing violations of the FDCPA, Defendants are liable to Ms. Smith for declaratory judgment that Defendants' conduct violated the FDCPA, actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. §1692k(a).

## COUNT III

### Invasion of Privacy – Intrusion Upon Seclusion

65. Ms. Smith incorporates by reference the foregoing paragraphs as though fully stated herein.

66. Restatement of the Law, Second, Torts, §652B defines intrusion upon seclusion as, "[o]ne who intentionally intrudes . . . upon the solitude or seclusion of another, or her private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

67. Defendants violated Ms. Smith's privacy. Defendants' violations include, but are not limited to, the following:

   a) Defendants intentionally intruded, physically or otherwise, upon Ms. Smith's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite a request(s) for the calls to cease.

   b) The number and frequency of the telephone calls to Ms. Smith by Defendants after a request(s) for the calls to cease constitute an intrusion on Ms. Smith's privacy and solitude.

   c) Defendants' conduct would be highly offensive to a reasonable person as Ms. Smith received countless calls that often interrupted and occupied her phone line.

   d) The frequency and volume of Defendants' calls were harassing to Ms. Smith.

68. Defendants' acts, as described above, were done intentionally with the purpose of coercing Ms. Smith to pay the alleged debt.

of all issues triable by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Andrea Smith respectfully requests an award be rendered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FDCPA;

B. Declaratory judgment that First Contact violated the TCPA;

C. Statutory damages against First Contact of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B);

D. Statutory damages against First Contact of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. §227(b)(3)(B), (C);

E. Actual damages pursuant to 15 U.S.C. §1692k(a);

F. Punitive damages pursuant to 15 U.S.C. §1692k(a);

G. Actual and punitive damages for Defendants' intrusion upon Ms. Smith's seclusion;

H. Attorneys' fees and costs pursuant to 15 U.S.C. §1692k(a);

I. Awarding Ms. Smith any pre-award and post-award interest as may be allowed under the law; and

J. Any other relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Ms. Smith hereby demands a trial by jury

s/ Christopher Kim Thompson, Esq.
TN Bar No. 015895
Thompson Law
4525 Harding Pike, Suite 203
Nashville, TN 37205
Telephone No. 615-620-4329
Kim@thompsonslawoffice.com